**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KIMBERLY BASS-DAVIS,<br><br>   Plaintiff,<br><br>v.<br><br>SOUTHLAND CORPORATION,<br><br>   Defendant. | 2:03-cv-1052-LDG-PAL<br><br>**ORDER** |

   In its previous order denying defendant Southland Corporation's motion to dismiss for failure to prosecute (#33), the court ruled that whether plaintiff Bass-Davis could maintain this action without conducting any affirmative discovery as to her claims should be tested on summary judgment. After Bass-Davis has now been put to her burden by Southland's motion (#34, opposition #36, reply #43), the answer can be given: No.

   Bass-Davis' sole remaining claim in this action alleges that in order to secure her stipulation to dismiss Southland from an underlying state court slip and fall case, Southland committed fraud by misrepresenting the extent of its control over the store in which the accident allegedly occurred. To prove a fraud in Nevada, a plaintiff must show by clear and convincing evidence that (1) the defendant made a false representation, (2) the defendant knew that the misrepresentation was false when it was made, (3) the defendant intended the misrepresentation to induce plaintiff's detrimental reliance, (4) plaintiff detrimentally and justifiably relied on the

misrepresentation, and (5) plaintiff was damaged by the misrepresentation.  J.A. Jones Const. Co. v. Lehrer McGovern Bovix, Inc., 120 Nev. 277, 89 P.3d 1009, 1018 (2004).[1]

In opposition to summary judgment on the fraud claim, Bass-Davis states that Chris Davis' deposition testimony in the state court action raises an issue of fact regarding whether Southland deceptively concealed material facts regarding its involvement with the Davises' franchise 7-11 business.  Davis testified that he and his wife "basically owned the right to do business there, the – Southland Corporation owns the buildings, the fixtures, everything as far as the Store goes.  We just had the right to do business."  Ex. 3 at 9, lines 3-7.  Per the franchise agreement, Southland took 52% of the gross income, with the Davises taking 48%.  Ex. 3 at 9, lines 8-14.  According to Davis, Southland was "in charge of the ordering of the stuff we sell, providing the employees, pretty much the day-to-day things of that nature."  Southland was "responsible for the way the Store looks, the way the Store is set up and things of that nature."  Ex. 3 at 9 line 23 to 10 line 3.  Southland controlled much of the pricing of the items and handled the accounting and payroll responsibilities.  Finally, Davis testified that Southland was the best entity to provide information regarding the identity of the employees working at the store at the time of the accident.  Plaintiff also argues that counsel for Southland inaccurately informed her that its agreement with the Davises was the same as that involved in a different case, which further induced plaintiff to enter the stipulation.

Whatever Davis' understanding of his franchise relationship with Southland, it does not raise an issue of fact regarding Southland's specific misrepresentations allegedly made to Bass-Davis.  Bass-Davis has presented absolutely no affidavits, testimony or facts regarding the specific context, circumstances and statements during her negotiations with Southland, or any indication of

---

[1] The court is quite frankly bewildered by Bass-Davis' insistence throughout her opposition to summary judgment that Southland be "brought back into the case" as a necessary party.  Such a demand has no part in this case, as Southland is already a defendant, and should be addressed, if at all, in the state court action, over which this court has no jurisdiction or control.

1 whether Southland knew that any part of its negotiations was false or misleading.² That is because
2 Bass-Davis never attempted at any point during this case to conduct even a single aspect of
3 discovery. In light of Nevada law which requires clear and convincing evidence on a fraud claim,
4 and recognizes that "[f]raud is never presumed," see id. (citing Havas v. Alger, 85 Nev. 627, 631,
5 461 P.2d 857, 860 (1969)), it seems the height of folly to prosecute a case in such a manner.

6     Indeed, the court finds that, as a matter of law based on this record, plaintiff could not have
7 justifiably relied upon the adversarial legal positions asserted by Southland, an opposing party.
8 Rather, plaintiff would have been justified in relying on the professional judgment of her own
9 counsel to conduct the necessary investigations and represent her interests.

10     THE COURT HEREBY ORDERS that defendant Southland Corporation's motion for
11 summary judgment (#34) is GRANTED.

13     DATED this _20_ day of March, 2007.

15 _____
    Lloyd D. George
16     United States District Judge

---

²For instance, there is no evidence to suggest that Southland did anything more than advance a colorable legal position regarding whether it should remain in the action, as opposed to representing facts which it knew to be false with the intent of inducing Bass-Davis to rely on them.

3